So let's go ahead and proceed. Thank you, your honors, and good morning. May it please the court, Jesse Evans Schroeder on behalf of petitioner David Ikspa-Santiago, who is referred to in the record as Epifanio Nape-Santiago. What do you call him? His true name is David Ikspa-Santiago. Okay. But I think he's been referred to in briefing through his alias Nape-Santiago. All right. Did both of you, I guess, both of you wanted us to, I think both of you contended that another case had priority and so that we need to wait. Is that right? I did not contend that another case has priority, but I concede and recognize that this court is entertaining argument in, I believe it's Navarette in this month that may bear on this case. It has not, the jurisdictional issues in that case have not been raised in this case or briefed in this case. If the court does want to hear more on that, then I would ask for an opportunity for supplemental briefing. Just briefly, and maybe we would need to do this for supplemental briefing. Are the cases exactly parallel? Is this one exactly parallel to Navarette? Do you know? I don't believe so, Your Honor. I mean, the Navarette case deals with Riley as cases addressing jurisdiction over challenges to reinstated orders. And in this case, we're really dealing with just the review of a discretionary continuance denial in withholding proceedings. Well, if Navarette has priority and to interpret post Riley jurisdictional issues, then we would be bound by that. But so you're saying there's no jurisdictional issues here. I'm not sure I agree with that. I'm not saying that. I'm just saying they have not been raised at all in this case, Your Honor. I understand that, but my understanding here is that the order that you're challenging, which was the withholding and cat only proceedings, and I understand what you're challenging about are the continuances, but the ultimate thing you're challenging are withholding and cat only proceedings. But the order in that case included a removal order. In other words, it could be that there is a second removal order here and that these two were decided together. That's correct, yes. Wait, so sorry. Is this a cat only proceeding? No, I mean, there is a separate cat claim that is pending in addition to the withholding claim. But is it withholding of removal under cat? No, there's a statutory withholding claim as well as convention against torture claim. But there was a reinstated removal order some time before this, and there was a reasonable fear proceeding, and then there was this cat and withholding only proceeding. Is that much right so far? Yes. All right. Then the order in the cat and removal and withholding order proceeding ordered the prior removal order to be reinstated itself. In other words, that order seems to have included a deportation order, even though there was also an earlier one. I agree. So it might be quite different for that reason. I'm sorry, what might be quite different? From Navarrette, because there was one order which included both the denial of the withholding cat claim and stated that there was a reinstatement of the prior removal order in the same order. I think. Your Honor, honestly, I would have to have to submit supplemental briefing. So it might be useful to have briefing on whether this is really the same as Navarrette, at least. I would be completely open to that. I think a related question is, okay, so you wanted these continuances, but what underlying proceeding were you trying to continue? Well, the applications for withholding and cat protection, which I acknowledge was in a reinstated removal proceedings. If I may, Your Honors, go to the issues that were briefed in this case. All right. Well, it's pretty, I think we're probably going to have to find out. If Navarrette has priority over us, there's a jurisdictional issue that post Riley is going to have to be addressed by someone. So that could affect things. That being said, factually, what you have here, you have a couple of issues. You have the continuance request, and then you have the expert testimony and the continuance for the U visa.  Okay. And if we are allowed to get to that, if we, because Navarrette could go a certain way that you're out.  Or we could go a certain way, depending on who has. But that, so on the continuance for expert testimony, Dr. Hernandez declaration was over 20 pages long, and the IJ reviewed it and this case. Well, I mean, first of all, Your Honor, the first thing that we look at is the good cause standard for granting a continuance. And so one of the factors in that, which is relevant to your question, I think is the nature of the evidence that was excluded. And at the time that the continuance request was lodged with the court 11 weeks before the merits hearing, the IJ was being asked to allow live expert testimony in context on issues that were plainly central to petitioner's claims. And those issues are really highlighted by the IJ's later claim of an absence of those, of evidence as to those issues in the record. Okay, but you said in your brief that you did not explicitly agree to the Tuesday, November 14, 2017 hearing. But at the January 17th hearing, the IJ made it clear that Wednesday and Thursdays are not Tucson calendar dates because the IJ would be at the prison those days. Counsel for the petitioner, which I believe was Rebecca Eisenberg, responded by asking if Fridays were available. When the IJ said no, counsel for petitioner stated Tuesday is fine then, Your Honor. So would you agree that it appears from the exchange that petitioner accepted having the merits hearing on a Tuesday and then sought an expert that wouldn't be available on a Tuesday? No, I think that's really a big mischaracterization of the record, Your Honor. Well, I'm reading from some things in the record. What counsel for petitioner said in the January 2017 hearing was we may opine that we will present an expert. And then she understood that she accepted the October 2017 hearing date. In March, the court sent a notice to petitioner's counsel moving the hearing date by a month to November. And I know there's been some doubt about whether that was how that was delivered to respondent's counsel, but the court will find at the administrative record at 394, the court notice with a stamp on the top right corner that says, attention, your hearing date has been rescheduled. Disregard any previous notice you may have received. We don't know from the record when the petitioner was able to obtain and retain a qualified expert. So what's really critical in this case, Your Honor, is that he did make this request for a continuance 11 weeks before the merits hearing. And when we do know that at that time, he had a qualified expert. As it's noted in the opening brief, it's not easy to find qualified experts to talk about these very detailed. Well, it's my understanding though, that too, that you can have people appear by telephone in these hearings. I don't see that there was any effort for that, or you could have secured someone else. I don't see that there was any effort for that. Well, we did request telephonic testimony, the petitioner did, but given the expert's schedule, which is documented, Your Honor, in his motion to continue, the petitioner's counsel submitted a letter from the expert as well as his teaching schedule, showing that he was not available because he was lecturing and holding student conferences during that time. As far as saying, well, the petitioner could have found an additional expert, I think this is sort of along the same lines as the court saying the petitioner could have submitted supplemental briefs or supplemental affidavits. This court's precedent does not require that individuals either predict what the judge is ultimately going to conclude in supplement the record in advance, particularly when what is being asked for is something that is live testimony responsive to the ongoing proceedings. And in terms of... I asked about the U-Visa before you ran out of time. Is there an update on the U-Visa situation? Not in the record, but the respondent did receive, and government counsel's aware of this, the bona fide determination that Your Honors may have heard of that is the first screening that appears he's eligible. The processing times right now lead me to believe that within a few months he will have the ultimate decision on that U-Visa. But so, sorry, the idea that he was prima facie eligible was already true, right? We knew that already. That was true back when the agency proceedings were happening. That's true. But so, you wanted a continuance back in around 2020, but so would the continuance still need to be in effect because he still doesn't have the U-Visa? I submit, Your Honor, that if you look at the framework laid out in Sanchez-Sosa, LNY, and even LABR, the primary consideration continues to be the applicant's prima facie eligibility, contrary to the government's assertion that a single sentence in LABR signifies that long processing times will categorically mean that a continuance is not warranted. Really, that sentence in LA... He doesn't have a U-Visa. That was the lead in. He doesn't have one yet, right? Not yet, no. But your argument is that relying on the time it would take alone is an error, and that is what you think the agency did here. Absolutely. But also, your representation is that this is apparently a two-stage process, and he has finally gotten through the first substantive part of it. That is true as well. Thank you. Oh, wait. Sorry, but I thought he already had gotten through the first substantive part back when... Well, I wouldn't... Sorry to interrupt, Your Honor. I wouldn't say that he... I mean, what happened was the IJ found that he was not prima facie eligible. The board passed on that question and sustained the denial of the continuance simply based on long processing times. He has now received a bona fide determination from USCIS. Oh, sorry. And so that is something that happened. So I guess I misunderstood that. So that had not happened yet at the time of the proceeding. They were just speculating at that point? The board simply did not address the IJ's finding that he was not prima facie eligible. They passed on that and denied the continuance simply based on long processing times. And then when did he... So that is a change. When did he get the determination? Oh, boy. I believe it was about three years ago. And then you said... Which, by the way, grants deferred action as well as work authorization. So it was three years ago he got the bona fide, and now he still doesn't have a U visa? I can't... I'd ask that you don't hold me to that date, but it's been a few years at least. But you also said that he should have the U visa in a few months. Where does that come from? The current processing times as I track them are that I'm seeing approvals come in for June of 2017, and his application was submitted in November of 2017. So do you want to save any time for rebuttal? Sure. Thank you. Okay. All right. We'll hear from the government. Good morning, Your Honors. May it please the Court. My name is Justin Markell, and I represent the Attorney General. I thought I might start by just kind of clarifying some of the differences between this case and Navarrette, because you guys were interested in it. The primary difference is that Navarrette also... The panel is interested in it, not you guys. I'm sorry, Your Honor. Sorry. Your Honor, in Navarrette, that case also involved the reinstated order removal, like our case. But unlike our case, in Navarrette, the petitioner was found not to have a reasonable fear of persecution. So he never moved on to the withholding-only proceedings like that occurred in this case. Arguably, I would renew my request that, to the extent the Court is interested in this issue, we should probably wait and hold this case for Navarrette to be decided or allow for a supplemental briefing on the issues, because I, too, am not especially prepared to talk about the nuances of Navarrette and, in particular, Justice Clarence Thomas's concurrence, which inspired the argument in Navarrette. But, to the extent you have some questions, I'm happy to do my best. And there may be other differences in this case, too. I mean, the one that I mentioned earlier, the nature of the actual order that was being reviewed here, and there may be others. So... And, in fact, if in Navarrette there was no withholding-cat determination, then it's hard to see how the cases are parallel. But, in any event, it may be worth having... Would it be worth having briefing in this case as to whether Navarrette is likely to govern before we decide whether to hold it? Yes, Your Honor. I think that might be wise. To the extent, Your Honors, do not have any further questions on that particular issue, I'm happy to move on to the other issues. It seems like we probably need to get briefing on that. So, yes, moving on, let's assume we have jurisdiction for now and then move on to what you would say on the merits. Yes, Your Honor. This case involves a petitioner who has already been removed from the United States on four separate occasions. And regarding the issue raised and briefed, the courts should reject petitioner's claim that the board erred in finding he failed to challenge the immigration judge's determination that he could avoid persecution by internally relocating within Mexico. Despite petitioner's broad claims... Because of the video, if you could slow down a little in your speech, that would help. Yes, Your Honor. I'm very sorry about that. Despite petitioner's broad claims, petitioner did not present any arguments specifically challenging the internal relocation finding. And therefore, the court should affirm the board's determination that that particular issue was waived. Regarding the denial of convention against torture protection, the court should also find that petitioner failed to establish that these individuals were tied to a larger criminal organization and petitioner failed to identify any record evidence that would compel reversal of that finding or compel the conclusion that these individuals had nationwide outreach within Mexico. Petitioner's entire argument is premised on the possible involvement of the Mexican government. His compromise is comprised of a single sentence where he simply asserts that he submitted substantial evidence or submitted extensive evidence that there is a consistent pattern of government acquiescence to torture, to the torture he fears. However, petitioner does... Sorry, could I before, just so we don't have enough time, could you talk about the continuance issues? It seems like you've started with the issues that were not the ones we were talking about in the opening argument. Oh, sure. I'm happy to talk about continuance issues. Regarding, which one would you like me to talk about first? Well, I'd be interested in the U-Visa first. Okay. Well, the U-Visa one, of particular note, it does seem like the core issue here is whether or not the board erred and relying on the time it takes to adjudicate the U-Visa. I'm relying only on that. Your Honor, yes, we can say relying only on that. And I would say that all of the precedent that petitioner cites can be distinguished in this case. In particular, in all those cases, they involved... You know what I always tell my law clerks when they say things can be distinguished, anything can be distinguished. That's really not the question. The question is... Well, I hope to find... Why is it different in a way that matters? Well, exactly. I hope to point that out to you. Because all those cases involved aliens in 240 proceedings. And this case involves an alien who was in reinstatement proceedings. So he already had a reinstated order removal at the time he filed his continuance. And so the... And his proceedings were supposed to be expedited. Meaning, in those other cases, to the extent the continuance was granted, and the alien eventually received whatever collateral relief they were seeking, it would have affected their... Whether or not a final order of removal was ever issued in their case. However, in our case, that's not the situation. The final order of removal was already issued before he filed for his continuance or filed for the U-Visa. And arguably... You're saying that we should go out on a new road and say that in this circumstance, the time frame question can be determined. Even though it can't otherwise. You have no authority for that, I assume. You're making an argument from first principles, essentially. Yes, right. And the precedent cited for the opposite conclusion did not involve the same facts as our case. Meaning, those other cases, they all were in 240 proceedings. So Malelia is the one I'm most worried about. That's a case from our court that says you can't just look at the time it will take to get a U-Visa. You're saying that doesn't apply here because this was this expedited proceeding instead. That's correct, Your Honor. I mean, it's important to point out in those cases too. So Malelia not only was the person in 240 proceedings, meaning they did not have a reinstated order removal, it was not expedited proceedings, but they were seeking adjustment of status, I think, based on a family visa petition. And if the continuance was not granted in that particular case, the final order removal would have been a very severe obstacle to them, if not foreclose their ability to get lawful permanent residence status. Well, the IHA gave a lot of reasons for denying the continuance, right? Yes, Your Honor. But then the BIA seemed to... Can you say whether the BIA adopted the IJ's reasoning and didn't get as explicit? Or what's the... Are you conceding that the only reason that the BIA gave was the time? I would say it's a little unclear, Your Honor. The board starts its analysis of the continuances by saying that it's, for the reasons stated in the immigration judge's determination, it was affirming the denial of the continuances. And then it moved on and addressed the continuance regarding the expert witness. And then it talked about the continuance related to the U visa. So arguably, it's a little unclear if that first statement was referencing both the denial of the also the denial of the continuance for the U visa. Admittedly, the government did not raise this or distinguish this in its brief. Because your brief assumed it was just the timing was the only reason, right? Yes, Your Honor, primarily because it appears to be what the board did. But there's a decent argument that that first statement about adopting the reasons why the immigration judge provided for denying the continuances should have extended to both. And arguably, in hindsight, I probably would have made the argument that he did. Can I ask you back to your way of distinguishing Malilia? If he had already had a U visa, let's just say he didn't need an extension, he had the U visa, do you acknowledge that that would have been a reason that would have helped him? Like the U visa is relevant to this expedited proceeding, is that right? Oh, yes, Your Honor. So the petitioner in this case already has a final order of removal. That does not prevent him from getting the U visa. It does not prevent him from ultimately adjusting his status. So if he had the U visa before the reinstatement order, arguably, he would have moved through the process, got the visa, and then would have adjusted status, depending on the timeline of how those things occurred. And so are you arguing, though, that even though a U visa would have allowed him to adjust status, and the U visa is about people who are here testifying to help the government, that no extension for a U visa is ever appropriate in these expedited proceedings? Or what is your timing issue that you're arguing takes us out of Malilia? Like, what should the rule be, are you saying, in this context? Arguably, you know, in the expedited proceeding context, I would argue there shouldn't be probably any continuances granted to await the U visas, especially at early phases like this one. Sorry, maybe I missed this, but is that an argument you made in your brief? Because I do think you're trying to take us into a novel area, and now you're asking for a very new, pretty aggressive rule. Is that a rule that you argued for in your brief? No, Your Honor, I didn't, admittedly. But I was just trying to answer your question. I mean, to the extent that the court wants to know whether or not an expedited removal, how to interpret these other cases in light of the fact that this case has different facts than those cases, my point of view would be the fact that expedited removal proceedings probably should in favor of no continuances being granted. And if you were going to grant continuance, it should be for a reasonably foreseeable future. It shouldn't be for eight or nine years. It seems to me like the better argument here, based on what you've argued in the past or whatever, is that the IJ gave a very detailed description as to why the continuance for the U visa wasn't appropriate. And the opening statement of the BIA was that I'm adopting what the IJ did on the continuances. And then the IJ doesn't say every single thing that the IJ said, but sort of pulled that in. And therefore, it really was part of the, but you're saying, you know, I don't know what you're saying. Well, on that point, I'm saying that that is a reasonable interpretation of the board's decision. But it just happens that that's not what exactly I briefed. Because it wasn't how you read it at first, apparently. Probably at the time. I have to say, this brief was written in December of 2020, when the pandemic was going on. And I was at home with my child because my wife worked at a hospital. We're digging through the backlog of all these cases when we couldn't get child care. So, I mean, we're talking about a situation that was rushed through. And in hindsight, I probably would have briefed it differently on that particular issue. And do you have a response to the idea that he probably is now about to get the U visa? No, and I can also provide some information on that. The bona fide determination was made in 2022. So, I don't know when in 2022, so approximately three to four years, as Petitioner Counsel indicated. And I have no reason to doubt Opposing Counsel's rough estimate for what the current grant rate is and where we are. So, where is he right now? Where is he right now? The Petitioner? Is the Petitioner here? Oh, I don't know if Petitioner's in the courtroom. Sorry. In the United States? Yes, Petitioner's in the United States. And it seems like we are going to need to get briefing on this jurisdictional issue, and it's probably going to take us months to decide this case. So, let's just hypothetically say that even figuring out if we can get to the merits is going to take us a few months. By then, will he have the U visa? And what would happen then? Then, would we be moot? I can't predict whether or not he would have the U visa because it could still be denied on the merits. Okay, but if he had the U visa, would it be moot at that point? Yes, we would probably to dismiss the case if he had the U visa. And when the IHA's other set of reasoning that the BIA did not allude to or adopt as such was that he wasn't prima facie likely to get the U visa, but the bona fide determination is contrary to that. So, why isn't at least that much of it moot? Well, I mean, as we argued in our brief, we think that the reason the board specifically provided, meaning the fact that that wasn't going to be granted a reasonable foreseeable future, and the guy was, you know, we now... No, no, I understand that. But you were saying that you had a dialogue with Judge Callahan about whether the IHA's reasoning should be assumed to have been affirmed by the board or not, and that in your brief, you assumed that it was not. But now you're saying, well, maybe it was. But I'm saying that that reasoning has now been just essentially disavowed by the agency itself. Well, it was a different agency. And the question before the court is whether or not the agency... Well, but if he has a bona fide claim to a U visa, then he certainly has a prima facie case for a U visa. Yes, but the question before the court is whether or not the immigration judge erred at that time, not whether or not it was later proven that someone else decided that he had a bona fide case. But it was sort of peculiar to affirm on the basis that has now been by the responsible agency disavowed. Can I ask a different... It seems like maybe you don't have an answer. Do you want to... Was that a question? Well, the question is why wouldn't it be an odd way to proceed to say he doesn't have a prima facie case when we know that the agency determined that he did have a... I mean, I'm not sure, but I gather they're basically overlapping questions which look at the same considerations. Well, I guess now that I've thought about it a little bit more, the prima facie determination does not explain why the person was determined to be prima facie. And we will ultimately decide. So the immigration judge found he wasn't prima facie eligible because the immigration judge concluded that he did not demonstrate the requisite mental anguish. And so we just don't know what the prima facie bona fide determination concluded. We don't know why they found this person to have a bona fide. And it's possible they consider different factors when they made that determination. So I might suggest that it's not helpful to me to say that the dog ate my homework or in terms of my COVID things, it was a tough time. We all sat during COVID and we still decided cases according to the law. There's a saying, close only counts in horseshoes and hand grenades. I don't know that COVID can be an excuse for not doing a good brief. Well, Your Honor, as I stated earlier, I admitted that I didn't raise the issue. So I was only answering the court's question about whether or not it was a reasonable reading of the board's decision. And to the extent the court read the decision differently than me, I wanted the court to know that I agree that that was a possible interpretation of the board's decision. Okay. Could I ask? Okay. I'm just looking ahead at this, how this case is going to proceed. And it seems that the jurisdictional issue in this case is quite complicated and is one that is going to need to be decided perhaps in a published opinion, even if NARRET has its own opinion, because this case is a little bit different. And so we are not looking at being able to decide this case quickly, probably. We're probably going to need to get briefing from you. We're going to have to think about it. We may need to write an opinion. Also, you are asking for a new law rule on expedited proceedings and continuances. So that also might be a complicated thing. If this case has a timeline that is very long and yet also has the potential for becoming moot along the way, should we do all this work or should we send you to mediation? What should we do here? Because this seems like we're on a collision course with ourselves in this case at this point. As we requested initially, the easiest step or first step might be to simply hold for NARRET and see where we are then. And because we might become moot while that case goes along, perhaps through en banc proceedings. I mean, that's also correct. Yes, Your Honor. Okay. That's helpful. All right. We'll go to, I'm going to give the petitioner two minutes for rebuttal. I'll give you a little extra time since we went over here. Thank you, Your Honor. Thank you. Thank you, Judge. I would assert to the government's new argument that there really is only one way to read the BIA decision. Although they have what might be construed as a sort of phrase introducing the denial of the continuances, they devote an entire paragraph to the denial of the continuance for the expert and an entire paragraph to the denial of the continuance for the UBISA. And also say, even assuming that he was prima facie approvable, long processing times weigh against granting a continuance. I would note to Judge Berzon's point that the agency that is actually qualified to adjudicate UBISAs, USCIS, made the bona fide determination in petitioner's case. And to the government's novel new proposition that all of the UBISA and agency related delay cases for this court should be reconsidered if an individual is in withholding only proceedings. Well, let me ask you this. If we were just reviewing what the IJ said, did the IJ say enough about why the continuance was denied? So he denied on no prima facie approval and long processing times, I believe. Well, it was rather extensive what the IJ did. And also made a finding that the applicant could get a stay of removal, which was very speculative and not one of the factors. But I mean... So you're saying the IJ wasn't good enough either? Well, we disagreed with the IJ's finding that he was not prima facie approvable. But I might disagree with you that the IJ's reasoning wasn't incorporated with the BIA in the sense that having been a prior trial judge, a lot of times we start with, okay, I agree with all that. And then we drill down a little more as far as... So you could probably say a reasonable person couldn't read it that way, but I'm not sure you want to say that to me. Fair enough. I believe that the IJ's reasoning was insufficient in light of the factors that are laid out in Sanchez-Sosa and LNY. He did not address the applicant's diligence and timeliness in applying. It was erroneous to find that he was not prima facie approvable. And I assume that that's why the board assumed that he was prima facie approvable. Well, I think we've gone over time on all of this. And thank all of you for your arguments. And it might be possible that you would hear from the panel that we would want you to mediate this while we're doing everything else. So stay tuned. Thank you. All right. Thank you. The court is going to take a short recess for 10 minutes, and then we'll come back and finish the calendar. Thank you.
judges: BERZON, CALLAHAN, FRIEDLAND